UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER CORDELL,<br><br>            Plaintiff,<br><br>     v.<br><br>S. ROBERT, et al.,<br><br>            Defendants. | No. 2:15-cv-0992 TLN CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the Second Amended Complaint, in which plaintiff claims that defendants Robert and Auld, both nurses employed at Mule Creek State Prison, were deliberately indifferent to his serious medical needs. (ECF No. 11 ("SAC")).

Before the court is defendants' motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and, alternatively, for failure to exhaust administrative remedies. (ECF No. 17.) Plaintiff has filed an opposition, and defendant has filed a reply. (ECF Nos. 18 & 19.) For the reasons discussed below, the undersigned will recommend that defendants' motion to dismiss for failure to state a claim be granted in part and denied in part. As to exhaustion, defendants' motion to dismiss should be denied without prejudice to renewal as a motion for summary judgment.

////

1

I. Standard for Failure to State a Claim

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

II. The SAC

Plaintiff alleges that in May 2014, he was diagnosed with emphysema with tumor-type nodules. (SAC at 3.[1]) Plaintiff was issued an inhaler and placed on a 30-45 day chronic care schedule. (Id.)

As a senior nurse at Mule Creek State Prison (MCSP), defendant Robert "was personally responsible to schedule all doctor appointments. In her absence, defendant [nurse] Auld assumed the responsibility. Both defendants either scheduled them personally, or ordered a scheduler to [do so]." (Id. at 14.)

Plaintiff alleges that, between June 2014 and January 2015, when he was transferred to another prison, Robert and Auld repeatedly failed to "respond to plaintiff's many medical request forms complaining of severe and chronic chest pain and breathing problems from his terminal illness[.]" (Id. at 14.) Defendants failed to schedule medical appointments in response to multiple requests by plaintiff during this period. (Id. at 5-11.) Robert knew plaintiff was on a

---

[1] References are to page numbers assigned by the court's docketing system.

chronic care program, requiring doctor's appointments every 30-45 days, yet plaintiff went months without seeing a doctor "because no chronic care appointments were made for him by defendant Robert." (Id. at 8.) Plaintiff "suffered physical harm from his severe and chronic pain for the time period October 1, 2014 to January 16, 2015, while under the defendants' care at Mule Creek State Prison." (Id. at 14.)

Plaintiff submitted multiple requests to see a doctor in December 2014 and January 2015. (Id. at 9-12.) On December 10, for example, he submitted a medical request form

> complaining of a heavy feeling in my chest and a stabbing pain for the past 3 weeks, several times per day, and again requesting information on pending tests and a potential biopsy. The reply from defendant Auld was, "A PCP appointment is scheduled in less than one week." Plaintiff never got an appointment with his PCP (doctor) in less than one week because defendant Auld never scheduled it.

(Id. at 9.) As to his December 23 medical request:

> It has now been three months since Plaintiff has seen his doctor. My chest pain and shortness of breath has been worsening. The chest pains are up to 7-8/10 and are interfering with my sleep, and thus my daily activities. Defendant Auld replied, "A chronic care appointment is scheduled in less than one week." Plaintiff never had that appointment because defendant Auld never scheduled it.

(Id. at 11.)

Between June 2014 and his January 2015 transfer out of MCSP, plaintiff received the following medical care for his emphysema:

- An appointment with a registered nurse on June 9 (id. at 5);
- An appointment with a registered nurse on June 26 (id.);
- A scheduled doctor's appointment on July 25, where he was sent away without seeing his doctor (id. at 6-7);
- A pulmonary function test on September 2 (id. at 8);
- A heart stress test on September 8 (id.);
- A doctor's appointment on September 30 (id. at 8-9);
- An appointment with defendant Robert on December 16 (id. at 10); and
- A CAT scan (id. at 11).

3

On January 16, 2015, plaintiff was transferred to Salinas Valley State Prison (SVSP). (Id. at 12.) "Plaintiff got a thorough physical. His spirometer was 325; 400 is nominally considered low. He also complained of sharp stabbing pains in his chest." (Id.)

> On February 12, 2015, Plaintiff had his first chronic care appointment [at SVSP]. After reviewing plaintiff's files, plaintiff's new doctor (PCP) raised his medical risk to high, due to his emphysema. This determination was based on the same information defendants Robert and Auld had at MCSP. Plaintiff's new PCP also ordered another CAT scan stat. It was done one week later and showed signs of pericardial effusion not evident on the last CT scan. Such a condition is known to cause chest pains.
>
> . . .
>
> On March 27, 2015, . . . I had an appointment to review the CAT scan results and do an Asthma Control Assessment Tool (ACAT) to determine the current status of my emphysema. The results of this test indicated very poor control of Plaintiff's emphysema.

(Id. at 12-13.)

Plaintiff was prescribed two new types of inhalers and, within forty days, his ACAT score "improved from 3 of 25 to 17 of 25, from poor control to not good control. Also, plaintiff's chest pains and shortness of breath are improved, greatly." (Id. at 13.)

III. Standard for Deliberate Indifference

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096. First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act

or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839.

A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106. A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

IV. Analysis

Courts in this district have considered prisoners' Eighth Amendment claims based on medical staff's failure to schedule appointments. In Butler v. Jong Jeoung Moon, 2011 WL 1103123, *4 (E.D. Cal. Mar. 22, 2011), plaintiff alleged that two doctors and a nurse "failed to secure follow-up appointments and treatment for Plaintiff for his many ailments." The court found that, absent allegations that defendants were "aware that plaintiff needed follow-up appointments and knowingly or callously failed to make those appointments knowing of the excessive risk to Plaintiff's health from such failure and that Plaintiff suffered harm as a result," plaintiff failed to state an Eighth Amendment claim. See also Burgess v. Raya, 2013 WL 4459867, *8 (E.D. Cal. Aug. 16, 2013) (defendant's alleged failure to schedule doctor's appointment per plaintiff's request "demonstrates negligence at best.").

////

Here, construing the pleading in the light most favorable to plaintiff, defendants were aware that plaintiff required chronic care appointments every 30-45 days for his emphysema. Defendants were responsible for scheduling plaintiff's medical appointments, and they were aware he submitted numerous requests to be seen by a physician for his symptoms.

Between April 2014 and January 2015, according to the complaint, there were gaps in plaintiff's medical care for emphysema. In July, in response to plaintiff's requests, Robert informed him that he had a doctor's appointment scheduled for July 21. (ECF No. 11 at 6.) The appointment "occurred on July 25, 2014 instead"; however, after plaintiff waited for over two hours, "the clinic officer sent plaintiff away without seeing his doctor." (Id. at 7.) Defendant Robert did not schedule a replacement appointment for plaintiff. (Id.) While these allegations may show Robert was negligent, they do not rise to the level of an Eighth Amendment violation.

Plaintiff did not have a doctor's appointment in August; however, in September, he underwent two diagnostic tests and saw a doctor on September 30.

Plaintiff does not allege that he requested an appointment or received medical care in October.

In November, plaintiff submitted a medical request for "an update on the tests the doctor planned to order." (Id. at 9.) He expressed concern that his tumors were potentially malignant. (Id.) Auld responded that a Primary Care Physician ("PCP") appointment was scheduled for the last week of the month; however, that appointment did not occur. (Id.) Plaintiff asserts there was no appointment because "Auld never scheduled it." (Id.)

Similarly, on December 10, plaintiff submitted a request complaining of "a heavy feeling in my chest and a stabbing pain for the past three weeks, several times per day," to which Auld replied that a PCP appointment was scheduled "in less than one week." (Id.) No such appointment occurred "because defendant Auld never scheduled it." (Id.)

On December 13, plaintiff requested to see his doctor after two-and-a-half months without a chronic care appointment. (Id. at 10.) Robert responded that plaintiff had an appointment on December 16. (Id.) On that day, plaintiff did not have a doctor's appointment ("because defendant Robert never scheduled it"); however, he had a RN visit with Robert. (Id.) Plaintiff

6

1  complained of "increasing chest pains, both intensity and duration, and that it appeared as though
2  his inhalers were becoming less effective." (Id.)  Robert told plaintiff he had a December 18
3  doctor appointment; however, Robert did not schedule the appointment and it did not occur. (Id.)

4  Plaintiff alleges that, despite his additional requests for care, Auld and Robert did not
5  schedule chronic care appointments in late December 2014 and early January 2015. (Id. at 11.)
6  His next doctor's appointment occurred at SVSP. (Id. at 12.)

7  Resolving all doubts in plaintiff's favor, between November 2014 and January 2015,
8  Auld and Robert were aware that he was not being examined by a doctor at prescribed intervals
9  and that his worsening symptoms put him at risk of serious harm, yet they did not schedule
10 plaintiff to see a doctor despite his multiple requests.

11 From plaintiff's subsequent medical assessments at SVSP, it can be inferred that plaintiff
12 was harmed by his inability to see a doctor at monthly intervals at MCSP. Once at SVSP, he was
13 determined to be at high medical risk from emphysema, given another CAT scan that revealed
14 new information, and prescribed inhalers that improved his symptoms. Moreover, plaintiff
15 alleges that he "suffered physical harm from his severe and chronic pain for the time period
16 October 1, 2014 to January 16, 2015, while under the defendants' care at Mule Creek State
17 Prison." (Id. at 14.)

18 The undersigned concludes that plaintiff's allegations as to the months of November 2014,
19 December 2014, and January 2015 until plaintiff's transfer are sufficient to state medical
20 indifference claims against Robert and Auld. Defendants' motion to dismiss for failure to state a
21 claim should be denied as to this period and otherwise granted.

22 V. Exhaustion of Remedies

23 Alternatively, defendants argue that plaintiff's claims should be dismissed for failure to
24 exhaust administrative remedies.

25 Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be
26 brought with respect to prison conditions under section 1983 of this title, . . . until such
27 administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (also known as
28 the Prison Litigation Reform Act ("PLRA")). A prisoner must exhaust his administrative

1  remedies before he commences suit. McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir.
2  2002). Failure to comply with the PLRA's exhaustion requirement is an affirmative defense that
3  must be raised and proved by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "[I]t is the
4  prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at
5  218.

6  In the Ninth Circuit, a defendant may raise the issue of administrative exhaustion in either
7  (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear
8  on the face of the complaint, or (2) a motion for summary judgment. Albino v. Baca, 747 F.3d
9  1162, 1169 (9th Cir. 2014) (*en banc*).

10  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion
11  requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006). When an inmate's administrative
12  grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as
13  "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v.
14  Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's
15  administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th
16  Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005)
17  (plaintiff not required to proceed to third level where appeal granted at second level and no
18  further relief was available).

19  Here, on the portion of the court's form concerning administrative remedies, plaintiff
20  indicates that he did not appeal his request for relief to the highest administrative level. (SAC at
21  3.) In the space provided for an explanation, plaintiff states: "Defendants failed to respond within
22  time limits." (Id.) In the body of the SAC, he describes filing an emergency medical appeal on
23  December 18, 2014. (Id. at 10.) In opposition to the motion, plaintiff asserts that he pursued
24  inmate appeals to the extent they were available to him. (ECF No. 18 at 17.)

25  Without a record of plaintiff's attempts to seek redress through the inmate appeals
26  process, the undersigned cannot rule out the possibility that administrative remedies were
27  "effectively unavailable." In order to consider any evidence of plaintiff's attempts to exhaust, the
28  district court should deny defendants' motion to dismiss for failure to exhaust without prejudice

8

to renewal as a motion for summary judgment. To conserve defendants' time and resources, any such motion should be due after the district court either adopts or rejects these findings and recommendations, thereby determining which claims shall go forward.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 17) be granted in part and denied in part as follows:

1. Granted as to plaintiff's claims against Robert and Auld stemming from allegations of events prior to November 2014;

2. Denied as to plaintiff's claims against Robert and Auld stemming from allegations of events between November 2014 and January 2015; and

3. Denied without prejudice as to defendants' arguments that the SAC should be dismissed for failure to exhaust administrative remedies. No later than thirty days from the district court's ruling on these findings and recommendations, defendants may renew their exhaustion argument in a motion for summary judgment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 26, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / cord0992.mtd_ex