UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WALTER CORDELL,

        Plaintiff,

    v.

S. ROBERT, et al.,

        Defendants.

No. 2:15-cv-0992 TLN CKD P

ORDER and FINDINGS AND
RECOMMENDATIONS

## I.    Introduction

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This action proceeds on the second amended complaint filed July 20, 2015, in which plaintiff alleges that defendants Robert and Auld, both nurses employed at Mule Creek State Prison, were deliberately indifferent to his serious medical needs. ECF No. 11. Following a partial grant of defendants' motion to dismiss, this case is proceeding on an Eighth Amendment claim of deliberate indifference by defendants from November 2014 until January 16, 2015, when plaintiff was transferred to Salinas Valley State Prison. See ECF Nos. 20 (Findings and Recommendation), 24 (Order adopting F&R).

## II.    Motions to Strike

Before addressing the parties' cross motions for summary judgment, the court finds it necessary to address defendants' motions to strike multiple pleadings filed by plaintiff because they are duplicative of the arguments plaintiff raised to support his own summary judgment

1

motion.  ECF Nos. 48, 66.  Plaintiff has also filed his own motion to strike which just repeats the argument presented in defendants' motions.  Compare ECF No. 57 (plaintiff's motion to strike) with ECF Nos. 48, 66 (defendants' motions to strike).  The information in plaintiff's objections is not just redundant, but the pleadings themselves are entirely duplicative.  Compare ECF No. 47 with ECF No. 64.  For this reason, the court will grant defendants' motions to strike plaintiff's objections filed on December 12, 2016 (ECF No. 47) and December 23, 2016 (ECF No. 64).  See Fed. R. Civ. P. 12(f).  Plaintiff's motion to strike is denied because it does not relate to any pleading filed by defendants.  ECF No. 57.

With these housekeeping matters out of the way, the court will now turn its attention to the cross summary judgment motions.  For the reasons discussed below, the undersigned will recommend that defendants' motion for summary judgment be granted and plaintiff's motion denied.

### III.    Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials..."  Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

1    **IV.    Analysis**

2    **A.    Allegations and Plaintiff's Statement of Undisputed Facts**

3    Plaintiff's evidence in opposition to defendants' summary judgment motion includes his

4    declaration (ECF No. 41-2, at 11-16 (Exhibit A)); Physician Request for Services (Id., at 18-20,

5    (Exhibit B)); diagnostic test reports (Id., at 23-31 (Exhibit C)); Nursing Visit Progress Notes (Id.,

6    at 33-36 (Exhibit D)); defendants' job descriptions (Id., at 38-44 (Exhibit E)); Primary Care

7    Provider Progress Notes (Id., at 46-49 (Exhibit F)); Physician's Orders (Id., at 51-54 (Exhibit G));

8    a Nursing Encounter Form (Id., at 56 (Exhibit H)); Health Care Services Request Forms (Id., at

9    59-71 (Exhibit I)); plaintiff's Salinas Valley State Prison medical records (Id., at 73-94 (Exhibit

10   J)); plaintiff's medication lists at Mule Creek and Salinas Valley (Id., at 96-99 (Exhibit K)); the

11   first level response to plaintiff's health care appeal (Id., at 101 (Exhibit L)); California Health

12   Care Services' pain management guidelines (Id., at 103-106 (Exhibit M)); Defendants' partial

13   response to plaintiff's request for production of documents (Id., at 108-09 (Exhibit N)): articles

14   relating to COPD (Id., at 111-12 (Exhibit O)); excerpts of defendants' declarations (Id., at 114-

15   115 (Exhibit P)); California Health Care Services' Chronic Care Program Procedure (Id., at 117-

16   119 (Exhibit R) (sic)); and, plaintiff's Refusal of Examination and/or Treatment form (Id., at 121

17   (Exhibit S)).

18   In his second amended complaint which is signed under the penalty of perjury, plaintiff

19   alleges that in May 2014 he was diagnosed with emphysema.  ECF No. 11 at 3.  On May 23,

20   2014, Dr. Jackson ordered a chronic care patient visit in 30-45 days.  ECF No. 41-2 at 51.

21   While in the waiting area at Mule Creek State Prison, plaintiff observed defendants Auld

22   and Robert sitting at the scheduler's workstation, typing in medical appointments on several

23   occasions.  Plaintiff's Declaration at ¶ 1.  Plaintiff overheard both defendants talking openly

24   about when and where to schedule specific inmates.  Id. at ¶ 2.  Plaintiff overheard both

25   defendants, in one instance, talk of how they would string one "whiner" along, by scheduling and

26   then cancelling appointments over and over.  Id.

27   Between November 2014 and January 2015, plaintiff submitted multiple request forms to

28   discuss his health issues and need for further tests with the doctor.  Id. at 9-12.  Defendants

reviewed these request forms and failed to schedule an appointment for the plaintiff to see the doctor.  Id.  As a result, plaintiff's chest pains and shortness of breath continued to worsen to the point that it interfered with his sleep and daily activities.  Id. at 11.

On January 16, 2015, plaintiff was transferred to Salinas Valley State Prison where he received a thorough physical the day he arrived and routine chronic care appointments.  Id. at 12-13.  Plaintiff was prescribed two new types of inhalers that reduced his chest pains and shortness of breath "greatly."  Id. at 13.

### B.  Defendants' Statement of Undisputed Facts and Evidence

Defendants have submitted a statement of undisputed facts as well as numerous declarations signed under penalty of perjury by defendants Auld and Robert, Dr. Reetika Kim Kumar, Chief Medical Executive at Salinas Valley State Prison, who reviewed plaintiff's medical records pertinent to this complaint, and Dr. James Jackson, plaintiff's treating physician while he was at Mule Creek State Prison.  See ECF Nos. 38-1, 45-2.  The evidence submitted by the defendants in support of the pending motion for summary judgment and in response to plaintiff's motion for summary judgment establishes the following:

Defendant Auld is a registered nurse in good standing with the California Nursing Board and employed at Mule Creek State Prison as a Supervising Nurse II.  (Defendants' Separate Statement of Undisputed Facts ("DSUF") at ¶ 1; Auld Declaration at ¶ 1).  Defendant Robert is a registered nurse in good standing with the California Nursing Board and employed at Mule Creek State Prison as a registered nurse.  DSUF at ¶ 1; Robert Declaration at ¶ 1.  As part of their training and education, both defendants have knowledge regarding treatment of patients with emphysema also known as chronic obstructive pulmonary disease (COPD) as well as treatment of patients with chronic pain.  Robert Declaration in Opposition to Plaintiff's Summary Judgment at ¶ 2; Auld Declaration in Opposition to Plaintiff's Summary Judgment at ¶ 2.  Defendants Robert and Auld have knowledge and experience on how to assess and identify the signs and symptoms of COPD.  Id.  Both defendants are also aware of treatment options, patient education, and nursing interventions for patients with COPD and chronic pain.  Id.

////

When examining a patient, it is part of Dr. Jackson's and defendant Robert's custom and practice to ask if the patient is in pain. Jackson Declaration at ¶ 3, Robert Declaration in Opposition to Plaintiff's Summary Judgment, at ¶ 7. Neither Dr. Jackson nor defendant Robert relies on the patient's verbal response as the only method of determining pain. Id. It is important to conduct an examination to determine if the pain level expressed verbally is consistent with physical signs like heart rate and breathing. Id.

Neither the nursing staff nor medical doctors are responsible for scheduling medical appointments for inmate patients. DSUF at ¶ 3-5; Auld Declaration at ¶ 2; Robert Declaration at ¶ 2; Kumar Declaration at ¶ 3. It is the job of the office technician to schedule medical appointments as well as any follow-up appointments. Id. The nursing staff request that medical appointments be scheduled by the office technician. Robert Declaration in Opposition to Plaintiff's Summary Judgment, at ¶ 5; Auld Declaration in Opposition to Plaintiff's Summary Judgment, at ¶ 5. Defendants Robert and Auld have never scheduled or cancelled plaintiff's medical appointments. Id.

The protocol for evaluation of patients determined to be chronic care patients is "a minimum of every 180 days or more frequently based on professional judgment." DSUF at ¶ 6; Kumar Declaration at ¶ 4; ECF No. 39 at 4 (California Prison Health Care Services' Chronic Disease Management Program Procedure).[1] Stable chronic care patients are to be evaluated every 180 days unless the PCP (physician) determines a need more often. Id.

On September 30, 2014, plaintiff was evaluated for his heart and lung disease by his physician Dr. Jackson. DSUF at ¶ 8-12, Jackson Declaration at ¶ 4. There was no evidence during that examination that plaintiff was in distress nor did he mention severe pain. Jackson Declaration, at ¶ 4. There was some evidence of early chronic obstructive pulmonary disease (COPD) also known as emphysema. Id. Plaintiff's COPD was stable so he did not need a visit more than every 180 days which would not be until March 2015, according to protocols. Id. at ¶ 5. In the medical records that Dr. Jackson prepared on September 30, 2014, he did not request

---

[1] The court grants defendants' request for judicial notice of this document pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

that plaintiff be seen for follow-up within a particular period of time.  Id.  Based on the

September 30, 2014 examination and findings that plaintiff's COPD was stable, any prior order

indicating he needed to be seen every 30-45 days was no longer applicable.  Id.

Plaintiff met the chronic care patient criteria for his COPD, but he was not a chronic care

pain patient so the protocols relating to chronic pain patients did not apply to plaintiff.  Jackson

Declaration at ¶ 4.

On November 15, 2014, Dr. Jackson informed nursing staff that plaintiff did not need any

follow-up medical appointment until November 27, 2014, at the earliest.  DSUF at ¶ 13; Kumar

Declaration at ¶ 6.  Although a follow-up appointment does not appear to have occurred on

November 27, 2014, there is no medical evidence of harm to plaintiff.  DSUF at ¶ 14; Kumar

Declaration at ¶ 6; Auld Declaration at ¶¶ 3-4; Robert Declaration at ¶¶ 4-5.  Dr. Jackson did not

instruct defendants to schedule any medical appointment for plaintiff between November 2014

and his transfer on January 16, 2015.  Jackson Declaration at ¶ 7.

On December 16, 2014, defendant Robert saw plaintiff as a walk-in patient at the clinic.

DSUF at ¶ 15; Robert Declaration at ¶ 3; Kumar Declaration at ¶ 7.  Defendant Robert performed

an examination and conversed with plaintiff regarding his complaints, including any pain he was

having.  Robert Declaration in Opposition to Plaintiff's Summary Judgment Motion, at ¶ 7.

Plaintiff did not appear to be in acute distress nor were there any findings on examination that

would indicate he was in acute distress.  Id.  There was no medical evidence of a change in

plaintiff's condition or worsening of his COPD from when he was seen on September 30, 2014 by

Dr. Jackson.  Id., DSUF at ¶ 16; Robert Declaration at ¶ 3; Kumar Declaration at ¶ 7.

On December 17, 2014, plaintiff had a chest CT that was previously ordered by Dr.

Jackson.  DSUF at ¶ 17; Jackson Declaration at ¶ 6; Kumar Declaration at ¶ 8.  The CT scan did

not demonstrate any significant pathology or any need for an urgent appointment.  Jackson

Declaration, at ¶ 6.  Based on the findings, plaintiff did not need to be seen for follow-up earlier

than 6 months post CT.   DSUF at ¶ 18; Jackson Declaration at ¶ 6; Kumar Declaration at ¶ 8.

On January 1, 2015, Dr. Jackson documented his review of plaintiff's chest CT scan and

noted that no further follow-up was needed for 6 months.  DSUF at ¶ 19; Jackson Declaration at ¶

6; Kumar Declaration at ¶ 9. Dr. Jackson did not order any return visits prior to plaintiff's transfer to SVSP. DSUF at ¶ 20; Kumar Declaration at ¶ 9. There was no evidence in any part of the medical chart that any harm occurred to plaintiff on account of his care at Mule Creek. DSUF at ¶21; Jackson Declaration at ¶ 9; Kumar Declaration at ¶ 9.

Plaintiff did not advise Dr. Jackson that he was suffering from any pulmonary related complications or in severe pain. Jackson Declaration at ¶ 14, 16. There was no indication for pain medications for plaintiff while at Mule Creek. Jackson Declaration at ¶ 14. Nor was there any evidence in the medical record or Dr. Jackson's examinations that indicated that plaintiff was suffering from pulmonary related complications or severe pain. Jackson Declaration at ¶ 14, 16.

On January 16, 2015, plaintiff was transferred to SVSP. DSUF at ¶ 22; Kumar Declaration at ¶ 10. While at SVSP, plaintiff received treatment for COPD that is not significantly different from that received at Mule Creek. DSUF at ¶ 23; Kumar Declaration at ¶ 10.

There is no medical evidence that defendants' actions or inactions caused plaintiff harm. DSUF at ¶24; Jackson Declaration at ¶10; Kumar Declaration at ¶ 11. All examinations, diagnostic studies, and medical records show that plaintiff's COPD was stable. Jackson Declaration at ¶ 11. A repeat CT scan that was done on February 19, 2015 while plaintiff was an inmate at Salinas Valley indicated that there was no change in his condition. Id. At no time did defendants Auld or Robert interfere or cancel a medical appointment that they believed plaintiff needed. DSUF at ¶ 25; Auld Declaration at ¶¶ 3-4; Robert Declaration at ¶¶ 4-5.

**C.     Undisputed Facts**

For purposes of resolving the summary judgment motions, the following facts are either undisputed by the parties, or, upon review of the evidence submitted, have been deemed undisputed.

Defendants Robert and Auld were aware of plaintiff's serious medical need. Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment, at ¶ 6, 7 ("PSUF").

////

When discussing medical issues, plaintiff is stoic, especially when discussing pain, meaning he is not physically or verbally animated.  PSUF at ¶ 12.

On November 26, 2014 plaintiff submitted a Health Care Services Request Form indicating that he wanted another CT scan of his chest.  ECF No. 41-2 at 65.  Dr. Jackson ordered the CT scan on December 1, 2014.  Id.

On December 10, 2014 plaintiff submitted another Health Care Services Request Form to see Dr. Jackson for stabbing pain in his chest of a level 3-4 on the pain scale.  ECF No. 41-2 at 66.  Defendant Auld responded to this request indicating that plaintiff had a primary care appointment in less than one week.  Id.

Plaintiff submitted another Health Care Services Request Form on December 13, 2014 to see Dr. Jackson to update his medical chrono.  ECF No. 41-2 at 67.  Defendant Robert responded to this request the next day by adding plaintiff's concerns to his primary care appointment that was scheduled for December 16, 2014.  Id.

Defendant Robert examined plaintiff on December 16, 2014 based on his request forms.  ECF No. 41-2 at 35.  She indicated that no shortness of breath or pain was noted.  Id.  Plaintiff "admit[ted] he is not in distress and just wanted an MD appointment ASAP to get labeled high risk."  Id.

On December 23, 2014 plaintiff submitted a fourth Health Care Services Request Form in order to see Dr. Jackson for his chronic care appointment.  ECF No. 41-2 at 68.  Defendant Auld responded to this request the next day by informing plaintiff that he had a chronic care appointment scheduled in less than one week.  Id.

The next day on December 25, 2014, plaintiff submitted another Health Care Services Request Form because the pain in his chest was worsening, his inhalers were less effective, he had lost 5-6 pounds, and he was having trouble sleeping.  ECF No. 41-2 at 69.  Defendant Auld responded to this request the next day by informing plaintiff that he had a primary care appointment scheduled in one week.  Id.  On December 27, 2014 plaintiff signed a Refusal of Examination and/or Treatment form witnessed by defendant Auld because he wanted to see Dr. Jackson instead of a nurse.  ECF No. 41-2 at 121.  This same form indicated that plaintiff had a

1  doctor visit scheduled for December 29, 2014.  Id.

2      On January 1, 2015 plaintiff submitted a Health Care Services Request Form in order to

3  discuss his CT scan results with Dr. Jackson.  ECF No. 41-2 at 70.  This request was referred to

4  Dr. Jackson who indicated on the form that plaintiff's nodule was too small for a biopsy and

5  recommended a follow-up CT scan in about 6 months.  Id.

6      On January 3, 2015 plaintiff submitted another Health Care Services Request Form

7  indicating that he was still having bad chest pain on both sides of his chest that were at a 5-6 level

8  of pain on the pain scale.  ECF No. 41-2 at 71.  This request was reviewed by defendant Robert

9  who examined plaintiff on January 6, 2015.  ECF No. 41-2 at 36 (Nursing Visit Progress Note),

10  71 (Health Care Services Request Form).  The notes of this visit indicate that plaintiff's 12/27

11  primary care appointment was rescheduled and that one of the purposes of plaintiff's visit was "to

12  ensure he did not fall through the cracks."  ECF No. 41-2 at 36.  Upon examination, defendant

13  Robert indicated that no shortness of breath was observed and that plaintiff was in "no acute

14  distress."  Id.

15      **D.      Evidentiary Objections**

16      Defendants have made objections to plaintiff's evidence, which the court has carefully

17  reviewed.  To the extent the court necessarily relied on evidence that has been objected to, the

18  court relied only on evidence it considered to be admissible.  It is not the practice of this court to

19  rule on evidentiary matters individually in the context of summary judgment.  This is particularly

20  true when "many of the objections are boilerplate recitations of evidentiary principles or blanket

21  objections without analysis applied to specific items of evidence."  See Capital Records, LLC v.

22  BlueBeat, Inc., 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting Doe v. Starbucks, Inc.,

23  2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)).

24      However, the court will address several evidentiary issues.  The court will not consider as

25  evidence plaintiff's attempts to interpret medical records, criteria, and protocols, or his statements

26  regarding what he believes was the cause of his pain or what his course of treatment should have

27  been.  The interpretation of medical records, criteria, and manuals, as well as the determination of

28  the appropriate course of treatment, involves matters that are scientific, technical, or require other

specialized knowledge. Accordingly, plaintiff may not testify as to these matters as a lay witness. Fed. R. Evid. 701. While plaintiff points out his higher education coursework, plaintiff does not qualify as an expert witness, and therefore cannot testify to these matters as an expert witness. Fed. R. Evid. 702. The court notes that while it will not consider plaintiff's attempts to interpret medical records, it will consider plaintiff's medical records themselves as evidence.

### E. Legal Standard

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131–32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104. "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F.3d at 1131–1132, citing McGuckin, 974 F.2d at 1059–60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective

approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105–106. A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745–46; see McGuckin, 974 F.2d at 1060.

**F.     Motions**

Defendants move for summary judgment in their favor on the grounds that: 1) there is no evidence of deliberate indifference on the part of the defendants because they were not responsible for scheduling plaintiff's medical appointments; and, 2) there is no evidence that any harm occurred to plaintiff on account of his care at Mule Creek.

Plaintiff filed a cross motion for summary judgment because both defendants were aware of his serious medical need for ongoing treatment and cancelled, failed to schedule, or interfered with his medical appointments which resulted in worsening severe chest pain due to his COPD.

**G.     Discussion**

The undersigned finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his inadequate medical care claim. See Matsushita Elec. Indus., 475 U.S. at 586 (1986). The court has reviewed plaintiff's verified complaint and his numerous pleadings and exhibits in opposition to defendants' pending motion. Drawing all reasonable inferences from the evidence submitted

1    in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence at the

2    summary judgment stage to create a genuine issue of material fact with respect to his claim that

3    the defendants violated his rights under the Eighth Amendment.

4        It is undisputed that plaintiff had a serious medical need at all times relevant to this action.

5    Both defendants have admitted that they were aware of plaintiff's serious medical need.

6    Therefore, there is no genuine issue of material fact as to the first prong of plaintiff's deliberate

7    indifference claim.  The only remaining issue is whether there is a genuine issue of material fact

8    concerning defendants' failure to respond to plaintiff's medical need in a manner that caused him

9    harm.  Jett, 439 F.3d at 1096.

10        There is no evidence of deliberate indifference on the part of the defendants because they

11   were not responsible for scheduling plaintiff's medical appointments.  Although no appointment

12   was scheduled on November 27, 2014, plaintiff's request from the previous day to have another

13   CT scan was ordered by Dr. Jackson on December 1, 2014 and completed on December 16, 2014.

14   Likewise, there is no evidence demonstrating that either defendant was responsible for plaintiff's

15   missed doctor appointment on December 29, 2014.  Plaintiff's subsequent examination by

16   defendant Robert on January 6, 2015 did not indicate any objective evidence of shortness of

17   breath or acute distress that would necessitate scheduling another appointment.  These two

18   specific missed appointments, on November 27, 2014 and December 29, 2014, which give rise to

19   plaintiff's claims, do not establish purposeful attempts to deny or obstruct plaintiff's access to

20   treatment.  See Toguchi v. Chung, 391 F.3d 1051, 1061 (9th Cir. 2004) (finding summary

21   judgment appropriate where physician provided consistent, responsive care to inmate and did not

22   deny, delay, or intentionally interfere with treatment).  Rather, they establish the reasonable

23   provision of medical care in response to plaintiff's request for services.  The failure to schedule,

24   or reschedule, two medical appointments demonstrates medical negligence at best which is

25   insufficient to establish an Eighth Amendment violation.  Toguchi, 391 F.3d at 1060-61; Hallett

26   v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

27   1981); see, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims

28   stemming from alleged delays in administering pain medication, treating broken nose and

13

1  providing replacement crutch, because claims did not amount to more than negligence).  Plaintiff

2  has failed to produce sufficient evidence regarding an essential element of his claim and,

3  therefore, defendants are entitled to summary judgment as a matter of law.  See Celotex, 477 U.S.

4  at 323.

5          Plaintiff also has not come forward with any competent evidence demonstrating that

6  defendants cancelled or failed to schedule any of plaintiff's medical appointments in conscious

7  disregard of an excessive risk to his health.  By merely expressing his vague and speculative

8  opinion in this regard, plaintiff fails to create a genuine issue of material fact.  See, e.g., Hansen v.

9  United States, 7 F.3d 137, 138 (9th Cir.1993) ("When the non-moving party relies on its own

10 affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by

11 factual data to create an issue of material fact.");  Fed. R. Civ. P. 56(c)(4) ("An affidavit or

12 declaration used to support or oppose a motion must be made on personal knowledge, set out

13 facts that would be admissible in evidence, and show that the affiant or declarant is competent to

14 testify on the matters stated.").  Plaintiff's statement that he overheard the defendants agreeing to

15 string along another inmate by scheduling and then cancelling appointments does not support the

16 sweeping inference that they must have done so in plaintiff's case.  See Thornton v. City of St.

17 Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement of

18 bias not sufficient to carry nonmoving party's burden in a motion for summary judgment).

19 There is no admissible evidence demonstrating that defendants knowingly delayed or otherwise

20 interfered with plaintiff's medical treatment for his COPD.

21         While plaintiff may have wanted to discuss his chronic condition with Dr. Jackson every

22 30-45 days as was initially warranted when plaintiff was first diagnosed with COPD, the medical

23 evidence demonstrates that plaintiff's condition stabilized to the point where follow-up was only

24 required every 6 months.  There is no evidence indicating that defendants were responsible for

25 plaintiff's missed doctor visit on December 29, 2014.  Dr. Jackson indicated on January 1, 2015

26 that there was no need for any medical follow-up for 6 more months based on the December CT

27 results.  Thus, while plaintiff may have wanted to discuss his December CT scan results with Dr.

28 Jackson in person, the doctor did not order any such appointment to be scheduled.  See Walker v.

14

Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (doctor entitled to summary judgment where plaintiff claimed not to have received antibiotics the doctor prescribed for him but failed to produce any evidence showing that the failure was in any way within that doctor's control); Robinson v. Catlett, 725 F. Supp. 2d 1203, 1209-10 (S.D. Cal. July 19, 2010) (prison nurse was not deliberately indifferent for failing to dispense pain medication where nurse "had no involvement in recommending, approving, or ordering the medication").

In this case, plaintiff has not come forward with any evidence demonstrating that the course of treatment provided by defendants was medically unacceptable under the circumstances. Although plaintiff received different inhalers and pain medication once transferred to SVSP, he has presented no evidence to indicate that the course of treatment he had been given at Mule Creek was not medically acceptable. Nor has plaintiff submitted any evidence to cast doubt on defendants' unrefuted expert testimony which establishes that the medical care plaintiff received was medically appropriate under the circumstances and within the standard of care and skill ordinarily exercised by reputable members of the medical profession at that time. Plaintiff has failed to raise a triable issue of fact that his complaints necessitated any further action on the part of the defendants.

Plaintiff's attempt to establish a triable issue of fact based upon the failure to provide treatment for chronic care patients within prison guidelines also fails. Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)). As previously stated, Section 1983 does not offer redress for a violation of "a state-created interest that reaches beyond that guaranteed by the federal Constitution." Sweaney, 119 F.3d at 1391. Additionally, "state departmental regulations do not establish a federal constitutional violation." Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009). The issue is whether the defendants were deliberately indifferent to plaintiff's serious medical needs. This is not established based upon failure to comply with CDCR or Mule Creek guidelines for providing medical treatment. Because there is

no genuine issue of material fact with respect to whether defendants were deliberately indifferent to plaintiff's serious medical needs by scheduling follow-up appointments for plaintiff's COPD, defendants' motion for summary judgment should be granted.

Even if the court were to grant plaintiff leave to amend his complaint to add the unidentified Mule Creek office technician responsible for scheduling appointments, there is no allegation that his or her conduct rises to the level of deliberate indifference as opposed to mere negligence. Therefore, since a claim for deliberate indifference under the Eighth Amendment would be futile against the office technician, the undersigned recommends denying plaintiff any leave to amend the complaint. See Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir. 1997) (stating that "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.").

**V.      Plain Language Summary for Pro Se Party**

Because you are acting as your own attorney in this case, the court wants to make sure that you understand this order. The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the pending motions for summary judgment, as well as the affidavits and evidence submitted by the parties, and has concluded that the facts of your case are not sufficiently in dispute to warrant a trial. This problem is not fixable by filing an amended complaint against the Mule Creek office technician responsible for scheduling or re-scheduling medical appointments because two missed appointments do not legally establish deliberate indifference to your serious medical needs.

You have fourteen days to explain to the court why this is not the correct outcome in your case. If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations."

In accordance with the above, IT IS HEREBY ORDERED that:

1.   Defendants' motions to strike (ECF Nos. 48, 66) are granted; and,

2.   Plaintiff's motion to strike (ECF No. 57) is denied.

////

IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment ( ECF No. 38) be granted;

2.  Plaintiff's motion for summary judgment (ECF No. 43) be denied;

3.  Judgment be entered in defendants' favor; and,

4.  The clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 24, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/cord0992.crossmsj.docx

17